## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## ROCK HILL DIVISION

| | | |
|---|---|---|
| DEBORAH JEAN JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 0:21-cv-01970-DCN-PJG |
| vs. | ) | |
| | ) | **ORDER** |
| KILOLO KIJAKAZI, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on Magistrate Judge Paige J. Gossett's report and recommendation ("R&R"), ECF No. 16, that the court affirm the Commissioner of Social Security's ("Commissioner") decision denying claimant Deborah Jean Johnson's ("Johnson") application for social security insurance ("SSI") and disability insurance benefits ("DIB") under the Social Security Act (the "Act"). For the reasons set forth below, the court adopts the R&R and affirms the Commissioner's decision.

## I.  BACKGROUND

### A.  Procedural History

Johnson filed an application for SSI on July 27, 2012 and an application for DIB on August 4, 2012, alleging that she has been disabled since January 25, 2004. The Social Security Administration (the "Agency") denied Johnson's application initially on October 11, 2012 and again upon reconsideration on February 22, 2013. Johnson requested a hearing before an administrative law judge ("ALJ"). Johnson's cases before

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kijakazi is automatically substituted for Andrew Saul, former Commissioner, as the defendant in this lawsuit.

1

the ALJ were twice remanded—first by order of this court on March 27, 2017, and then by consent of the parties on July 17, 2020. ECF No. 7, Tr. 1257, 2326. Upon remand, ALJ Carl B. Watson presided over a hearing held on February 4, 2021, at which Johnson and a vocational expert ("VE"), Caraetta Harrelson, testified. In a decision issued on April 22, 2021, the ALJ determined that Johnson became disabled on September 26, 2020, but, as relevant to Johnson's application, was not disabled within the meaning of the Act at any time through September 30, 2009, the date last insured. The Appeals Council did not review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.

On July 1, 2021, Johnson filed this action seeking review of the ALJ's decision. ECF No. 1, Compl. Pursuant to 28 U.S.C. § 636 and Local Civ. Rule 73.02(B)(2)(a) (D.S.C.), the action was referred to Magistrate Judge Gossett. On July 29, 2022, Magistrate Judge Gossett issued the R&R, recommending that the court affirm the ALJ's decision. ECF No. 16. Johnson filed objections to the R&R on August 10, 2022, ECF No. 19, and the Commissioner responded to the objections on August 19, 2022, ECF No. 21. As such, the matter has been fully briefed and is ripe for the court's review.

**B.  Medical History**

The parties are familiar with Johnson's medical history, the facts of which are ably recited by the R&R. Therefore, the court dispenses with a lengthy recitation thereof and instead briefly recounts those facts material to its review of Johnson's objections to the R&R. Johnson alleges a disability onset date of January 25, 2004, when she was thirty-eight years old. Her date of last insured is September 30, 2009. Johnson alleges disability due to a variety of conditions, including, as most relevant to the instant matter,

her low adaptive functioning.[2]  Johnson quit school after she could not pass eighth grade,

after attending for three years.  She has past work experience as a childcare attendant.

### C.  The ALJ's Decision

The Social Security Act defines "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months."  42 U.S.C.

§ 423(d)(1)(A); 20 C.F.R. § 404.1505.  The Social Security regulations establish a five-

step sequential evaluation process to determine whether a claimant is disabled.  See 20

C.F.R. §§ 404.1520, 416.920.  Under this process, the ALJ must determine whether the

claimant: (1) is currently engaged in substantial gainful activity; (2) has a severe

impairment; (3) has an impairment which equals an impairment contained in 20 C.F.R.

§ 404, Subpt. P, App'x 1, which warrants a finding of disability without considering

vocational factors; (4) if not, whether the claimant has an impairment which prevents him

or her from performing past relevant work; and (5) if so, whether the claimant is able to

perform other work considering both his or her remaining physical and mental capacities

(defined by his or her residual functional capacity) and his or her vocational capabilities

(age, education, and past work experience) to adjust to a new job.  See 20 C.F.R.

§ 404.1520; Hall v. Harris, 658 F.2d 260, 264–65 (4th Cir. 1981).  The applicant bears

the burden of proof during the first four steps of the inquiry, while the burden shifts to the

---

[2] Johnson's other claimed conditions include obesity, pancreatitis, diabetes, fibromyalgia, lupus, depression, anxiety, chronic obstructive pulmonary disorder, bronchitis, hypertension, hypertriglyceridemia, congestive heart failure, back disorder, gastroesophageal reflux disease, retinopathy, and kidney disorder.

Commissioner for the final step.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995)

(citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).  "If an applicant's claim fails

at any step of the [sequential evaluation] process, the ALJ need not advance to the

subsequent steps."  Id. (citing Hunter, 993 F.2d at 35).

      To determine whether Johnson was disabled from her alleged onset date of

January 25, 2004, until September 30, 2009, her date of last insured, the ALJ employed

the statutorily required five-step evaluation process.  At the first step, the ALJ found that

Johnson has not engaged in substantial gainful activity since her alleged onset date.  Tr.

2270.  At the second step, the ALJ found that Johnson has the following severe

impairments: obesity, pancreatitis, diabetes, fibromyalgia, lupus, depression, and anxiety.

Tr. 2270.  Of note, this entailed determining that Johnson did not have an intellectual

disability that qualified as a severe impediment.  At the third step, the ALJ found that

Johnson does not have an impairment or combination of impairments that meets or

medically equals the severity of one of the impairments listed in the Agency's Listing of

Impairments, 20 CFR § 404.1520(d), et seq.  Tr. 2278.  Before reaching the fourth step,

the ALJ determined that Johnson retained the residual functional capacity ("RFC") to

> stand, walk, and sit for 6 hours each in an 8-hour day.  She cannot climb
> ladders, ropes, or scaffolds but she can occasionally climb ramps and stairs.
> Claimant must avoid working at unprotected heights or around hazardous
> machinery.  Claimant has the mental ability to perform work that needs little
> specific vocational preparation where the duties can be learned on the job
> in 30 days or less.  Any time off task can be accommodated by normal
> employer afforded breaks (e.g., 15 minutes in the morning, a 30 minute[]
> lunch break, and a 15- minute break in the afternoon).  Claimant must work
> in an environment where changes are infrequent and gradually introduced.

Tr. 2282–83.  Based on the RFC, at the fourth step, the ALJ found that Johnson could

perform past relevant work as a wet suit gluer, bulb filler, or container finisher inspector.

4

Tr. 2295. Further, the ALJ found that considering Johnson's age, education, work experience, and RFC, other jobs existed in significant numbers in the national economy that the claimant could have performed. Tr. 2294. Therefore, the ALJ concluded that Johnson was not disabled under the meaning of the Social Security Act during the period at issue.

## II.  STANDARD

This court is charged with conducting a de novo review of any portion of the Magistrate Judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the Magistrate Judge. See Thomas v. Arn, 474 U.S. 140, 149–50 (1985). The recommendation of the Magistrate Judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270–71 (1976). However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the Magistrate Judge's proposed findings. Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a specific objection, the court reviews the R&R only for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal citations

omitted).  "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence."  Id.  Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]," not on the reviewing court.  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citation omitted).  Although the district court's role is limited, "it does not follow . . . that the findings of the administrative agency are to be mechanically accepted.  The statutorily granted review contemplates more than an uncritical rubber stamping of the administrative action."  Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969).  Further, although the court will not reweigh the evidence considered, the Commissioner's findings of fact are not binding where they are based on an improper legal standard.  Coffman v. Bowen, 829 F.2d 514, 519 (4th Cir. 1987).

### III.  DISCUSSION

Johnson objects to the R&R on one primary ground.  Johnson argues that the Magistrate Judge erred in finding that the ALJ properly considered evidence of Johnson's adaptive functioning to determine that Johnson did not have a qualifying intellectual disability.

In her application, Johnson presented evidence that on a Wechsler Adult Intelligence Scale test, she earned a verbal IQ score of 62, a performance IQ score of 68, and a full-scale IQ score of 62.  On an academic achievement test administered to her, Johnson scored at a second to third-grade level.  Dr. James Way ("Dr. Way"), who administered both tests, diagnosed Johnson with "mild mental retardation range of

intellectual functioning." Tr. 2289. The ALJ applied both Listing 12.05B as currently in effect and former Listing 12.05C[3] to determine whether the evidence supported a conclusion that Johnson's intellectual disability is severe. The ALJ determined that despite the IQ scores and Johnson's allegations, "the evidence does not support a conclusion that [her] intellectual disability is a severe impairment." Tr. 2272.

> Listing 12.05B requires, in relevant part:
>
> B. Satisfied by 1, 2, and 3 (see 12.00H):
> 1. Significantly subaverage general intellectual functioning evidenced by a or b:
>> a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>> b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
> 2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>> a. Understand, remember, or apply information (see 12.00E1); or
>> b. Interact with others (see 12.00E2); or
>> c. Concentrate, persist, or maintain pace (see 12.00E3); or
>> d. Adapt or manage oneself (see 12.00E4); and
> 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

Jamison v. Kijakazi, 2022 WL 3699635, at *7–8 (D.S.C. Aug. 26, 2022) (citing 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.05). Johnson argued that the ALJ failed to

---

[3] As the ALJ noted, this court ruled in a prior order that although Listing 12.05C was deleted from the Agency's Listing of Impairments, it still applies in this action since the court must apply the rules that were in effect at the time the Agency issued the decision. Tr. 1261; Johnson v. Berryhill, 2017 WL 1135129, at *2 n.1 (D.S.C. Mar. 27, 2017) (citing 81 Fed Reg. 66,138 n.1 (Sept. 26, 2016)). However, since both parties have proceeded to apply current Listing 12.05B and doing so does not alter the court's analysis, the court will proceed in the same way.

consider several of Johnson's significant everyday deficiencies as part of the analysis. Specifically, Johnson argued that the ALJ failed to consider that Johnson has never lived independently in her life and would be unable to do so based on her limitations in the areas of mental functioning described under paragraph B.2. In both her objections and prior arguments, Johnson relied upon the evaluations of Dr. Way and Dr. Cashton Spivey ("Dr. Spivey"), among other evidence, to support this contention. ECF No. 19 at 3–4.

The facts that Johnson relies on in challenging the ALJ's decision are largely tangential to the ALJ's decision regarding Listing 12.05B and, to the extent they are relevant, the ALJ appropriately accounted for them. Of note, the third and final "prong" of Listing 12.05B, which is an inclusive requirement along with the prior two prongs, requires evidence that the intellectual impairment manifested before the age of twenty-two. The ALJ noted that Johnson had failed to present any evidence that she had a significant intellectual disability in school, including through special education records or even "any source believed to have records." Tr. 2273. In her objections, Johnson argues that she was not required to provide any IQ or academic test scores administered to her prior to the age of twenty-two, and Johnson is certainly correct on that point.[4] But

---

[4] Johnson refers to the ALJ's comment that "the evidence does not document an attempt . . . to administer standardized measurements to assess intellectual functioning prior to the age of 22," and as such, there was limited evidence that onset of the impairment occurred before age twenty-two. Tr. 2273. Johnson argues that she was not required to provide an IQ score obtained from prior to the age of twenty-two, but the case cited by Johnson is inapposite as it does not specifically pertain to Listing 12.05. Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 338, 341 (4th Cir. 2012) (discussing relevance of evidence that postdated the date of last insured). Nevertheless, the court agrees that Listing 12.05 does not require that scores be obtained prior to the age of twenty-two. See Hutson v. Colvin, 2013 WL 5409837, at *3 (S.D. W. Va. Sept. 25, 2013) ("Because IQ scores presumptively remain constant throughout a person's lifetime, the claimant need not provide an IQ score obtained prior to the age of 22 to satisfy the [intellectual disability] listing.").

critically, Johnson still fails to provide evidence that the alleged deficits in her adaptive functioning manifested prior to attainment of age twenty-two.  As such, even if the court were to ultimately find that the ALJ's conclusions regarding Listing 12.05B's second-paragraph requirements were not supported by substantial evidence—which the court does not—it would still overrule Johnson's objections on the grounds that she has failed to show a reasonable possibility that the ALJ would have reached a contrary decision. See Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe the remand might lead to a different result.").

But even if the court discounted the ALJ's finding on the third paragraph of Listing 12.05B, the evidence presented by Johnson in her objections fails to undermine the substantial evidence supporting the ALJ's conclusion on the second paragraph regarding her current deficits in adaptive functioning.  As the Magistrate Judge observed, the ALJ also looked to evidence of Johnson's intellectual functioning since attaining the age of twenty-two, including her ability to work, drive, go shopping, go to church, engage in meal preparation, perform household chores, and attend to other personal-need tasks.  R&R at 8 (citing Tr. 2273–74).  While the court found in its previous order that the ALJ's findings regarding Johnson's self-care and home living skills "lacked evidentiary support," Tr. 1269, here, the court finds—as the Magistrate Judge did—that the ALJ's findings are amply supported by evidence.

In response, Johnson argues that "the ability to perform these few and limited activities means" does not mean "that a person does not have deficits in adaptive functioning."  ECF No. 19 at 7.  In support, Johnson cites the Fourth Circuit's decision in

Arakas v. Commissioner, 983 F.3d 83, 89 (4th Cir. 2020).  To be sure, the court in

Arakas explained that "disability claimants should not be penalized for attempting to lead

normal lives in the face of their limitations."  Id. (quoting Lewis v. Berryhill, 858 F.3d

858, 868 n.3 (4th Cir. 2017)).  But unlike in Arakas, the ALJ here did not put on blinders

to consider the evidence, to the exclusion of other contrary evidence.  Rather, the ALJ

considered the alleged limitations set forth by Johnson but found that they did not rise to

the level of being extreme.  For example, the ALJ considered Johnson's testimony that

she has lived with and relied upon her family her whole life: first with her parents until

they passed away and now with her son and daughter-in-law.  Under the second area of

mental functioning described in paragraph two—the ability to interact with others—the

ALJ found that this evidence did not rise to the level of showing a marked or extreme

limitation because Johnson testified that she typically stayed to herself, even when with

her family at home.  Tr. 2279.  As another example, under the third area of mental

functioning, the ALJ considered Johnson's evidence and concluded that the evidence

certainly reflected Johnson's "moderate limitation in understanding, remembering or

applying information," and he "[t]ook this into consideration in assigning [Johnson]'s

residual function capacity."  Tr. 2291 (emphasis added).  However, the ALJ did not find

that the evidence suggested Johnson had a marked or extreme limitation.  See Tr. 2274.

     The ALJ continued this for each area of mental functioning, in some cases finding

that the evidence showed moderate limitations, but not marked or extreme ones.  E.g., Tr.

2282 (reaching the same conclusion for "adapting or managing oneself").  In other words,

the ALJ considered the evidence but chose to weigh it differently than how Johnson

wishes the court to weigh it.  As the Magistrate Judge correctly noted, it is not the

province of the court to "reweigh the evidence presented, as such action is contrary to the substantial evidence standard of review."  R&R at 14 (citing <u>Craig</u>, 76 F.3d at 589).  In this case, the ALJ considered pertinent evidence and weighed appropriate factors in analyzing whether Johnson met the requirements in Listing 12.05B.  The fact that Johnson can point to other evidence that supports her position does not mean that the ALJ's decision was unsupported.  <u>See</u> <u>Hancock v. Astrue</u>, 667 F.3d 470, 476 (4th Cir. 2012) (rejecting the claimant's argument that in analyzing the claimant's adaptive functioning, the ALJ gave too much weight to evidence that the claimant worked several jobs and attended GED classes, and not enough weight to evidence that she was unable to successfully take any of the GED tests).  Here, the ALJ was clearly aware of the additional information that Johnson claims the ALJ "ignore[d]" or "ma[d]e up."  ECF No. 19 at 6.  Thus, although Johnson insists that she displays the requisite deficits in adaptive functioning, the court cannot say that the ALJ's decision was not supported by substantial evidence.

## IV.   CONCLUSION

For the foregoing reasons the court **ADOPTS** the R&R and **AFFIRMS** the Commissioner's decision.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 19, 2022**
**Charleston, South Carolina**